UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM P. FROLING and MARILYN
FROLING,

              Plaintiffs,

     v.                                  Case No. 12-12464
                                       Honorable Julian Abele Cook, Jr.

CITY OF BLOOMFIELD HILLS,

              Defendant.


<u>ORDER</u>

In this civil action, the Plaintiffs, William and Marilyn Froling, have generally complained that the natural water flow patterns onto their property have been substantially modified and exacerbated by their neighbors in violation of existing municipal ordinances. They also complain that this conduct by their neighbors was impliedly authorized by the Defendant, the City of Bloomfield Hills in Michigan ("City"), which, in turn, adversely affected the fair market value of their property interests.

The Plaintiffs, acting upon the provisions of 42 U.S.C. § 1983, have cited violations of the First Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

Currently before the Court are the City's motions for (1) the entry of a judgment under Fed. R. Civ. P. 12(c) and 56, and (2) the imposition of sanctions against the Plaintiffs pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

I.

The Plaintiffs claim to have initially noticed flooding on their property in 1989, after the grade was raised on the adjoining property during the construction of their neighbor's house. They allegedly brought the flooding issue to the attention of the City without any resolution of the problem. According to the Plaintiffs, construction in their subdivision and on the nearby golf course continued to cause a redirection of the natural water flow toward their property.

Believing that their entreaties to the City would continue to be fruitless, the Plaintiffs filed a lawsuit in a state court on November 8, 2004, in which they accused (1) several neighbors of maintaining and committing a wrongful trespass against their property, and (2) the City for negligence.  They also sought a mandamus which, if granted, would enforce the City's ordinances. However, their claims against (1) the City were dismissed on the basis of governmental immunity, and (2) their neighbors were also dismissed because, in the opinion of the state court, the petitioners had violated the relevant statutes of limitations.

It should also be noted that in 2004, the City entered into a consent decree with the Michigan Department of Environmental Quality, which required it to prevent an overflow of sanitary sewers. In 2008, Bloomfield Hills successfully sued the Plaintiffs in state court, forcing them to (1) disconnect their sump pump that had been illegally connected to the City's sewer system and (2) remove a berm that had been constructed on their property without a permit. This decision was affirmed by the Michigan Court of Appeals.

On November 11, 2008, the Plaintiffs submitted an application for a permit to install a second berm on their property. However, the parties disagree as to whether this proposed berm was different in size and location from the original one that had been removed by the City. In following

2

the recommendation of its engineer, James Burton, the City rejected the Plaintiffs' application on December 23, 2008 - a decision that was challenged by the Plaintiffs with the filing of a notice of appeal. Thereafter, the City forwarded a letter in which the City Manager wrote, "I believe that it is more expeditious to place the entire matter before the City Commission which we can accomplish for the February 10, 2009 meeting if you submit your materials to the City by January 16, 2009." The Plaintiffs did not reply to the City's letter until June 19, 2009, when they requested the City Commission to place this issue on its September 2009 agenda. Shortly thereafter, the City rejected the Plaintiffs' request on two grounds; namely, (1) it interpreted the Plaintiffs' silence during the preceding six-month period as a waiver of their appellate rights, and (2) the berm application described the exact berm that had been previously rejected. This decision was not appealed to the state court.

In 2011, after another episode of flooding, the Plaintiffs filed a claim pursuant to the Public Act 222 of 2001, Mich. Comp. Laws § 691.1416 *et seq.* ("Act 222 claim"), for compensation for the allegedly defective drainage system along Rathmor Road. This claim was denied by the City, which (1) contended that it has no responsibility for this drainage system and (2) refused to compensate the Plaintiffs for their claim.  No appeal was undertaken by the Plaintiffs regarding this issue.

In May 2012, one of the Plaintiffs, William Froling, removed some rocks from the Rathmor Road right-of-way that, according to him, had been placed there by a neighbor for the purpose of diverting water into the culvert. Shortly thereafter, he was informed by the City, through its police department, that the rocks must be returned immediately and that he would face arrest if any further work was conducted in the right-of-way without a permit. In July 2012, the Plaintiffs submitted a Freedom of Information Act request relating to their neighbor's permit to work in the right-of-way

3

and were told that no such permit exists. The Plaintiffs subsequently filed a permit application, in which they requested permission to block the Rathmor Road culverts. When this application was denied, the Plaintiffs filed an appeal to the City Commission, which denied their application for relief on September 11, 2012. The Plaintiffs appealed this denial to the Oakland County Circuit Court of Michigan. However, the parties stipulated to a dismissal of this matter with prejudice on October 30, 2012.

This lawsuit was filed on June 6, 2012. Approximately one month later, Bloomfield Hills filed a motion for summary judgment. At a hearing on December 18, 2012, the Court requested supplemental briefing on the defenses of res judicata and statute of limitations that had been raised by the City . Those issues are now fully briefed.

II.

A Rule 12(c) motion for judgment on the pleadings may be treated in the same manner as a motion to dismiss under Rule 12(b)(6). *Mixon v. Ohio,* 193 F.3d 389, 399 (6th Cir. 1999). Such a request for relief should be granted only "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (citation and internal quotation marks omitted). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (citation and internal quotation marks omitted). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (citation and internal quotation marks omitted).

When considering a 12(b)(6) or 12(c) motion, "documents attached to the pleadings become

4

part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10 (c)). "In determining whether to grant a Rule 12(b)(6) motion, the court [should primarily consider] the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (applying *Amini*, 259 F.3d at 502, in the context of a Rule 12 (c) motion (citation and internal quotation marks omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [Plaintiffs'] complaint and are central to [their] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620

F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

III.

Initially, the Plaintiffs submit that the filing of a motion for summary judgment prior to discovery is premature. "[O]rdinarily summary judgment should not be granted before discovery is completed." *French v. Runda*, 948 F.2d 1288 (6th Cir. 1991) (unpublished). "Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995).

The parties in this case are in an unusual position due to the protracted state court litigation process. The City contends that the facts underlying the Plaintiffs' claims are well known to both parties. Thus, it is its belief that no further discovery is necessary to resolve the res judicata and statute of limitations issues. On the other hand, the Plaintiffs have submitted an affidavit pursuant to Fed. R. Civ. P. 56(d) in which their counsel asserted the clients' need for additional discovery. However, this affidavit does not identify the information that the Plaintiffs hope to discover. In order to establish that the motion for summary judgment was submitted prematurely, the Plaintiffs must at least specify the specific information that they are lacking. *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 345 (6th Cir. 2011). "Nebulous assertions that more discovery time would have produced evidence to defeat summary judgment will be unavailing." *Lanier v. Bryant,* 332 F.3d 999, 1006 (6th Cir. 2003); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) ("general and conclusory statements" in affidavit regarding need for discovery are insufficient).

Although no discovery has taken place to date, it appears that the evidence relevant to the defenses of res judicata and statute of limitations is available to both parties. Without some indication of additional evidence that the Plaintiffs hope to discover, consideration of the City's res

judicata and statute of limitations defenses is appropriate.

Here, the Plaintiffs contend that the City violated their (1) equal protection rights by enforcing city ordinances against the Plaintiffs when it declined to enforce its ordinances against their allegedly offending neighbors; (2) substantive due process rights by using improper grounds upon which to reject their claims and frustrate their efforts to rectify the flooding problems; and (3) First Amendment rights by vigorously enforcing the City's ordinances and denying their Act 222 claim as acts of retaliation for the 2004 lawsuit against the City. In addition to denying the merit of these arguments, the Plaintiffs' assert that these claims (1) are barred by the statute of limitations, res judicata, and collateral estoppel, and (2) fail to state a claim on which relief can be granted.

## A.    Statute of Limitations

The City first submits that the Plaintiffs' claims are barred by the statute of limitations for § 1983 actions. The Sixth Circuit has held that "the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005). Although state law specifies the length of the limitations period to be applied in a § 1983 action, "federal law governs the question of when that limitations period begins to run." *Id.* "Ordinarily, the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). However, the running of the period may be tolled if a plaintiff establishes a "continuing violation." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).

Inasmuch as federal law controls the date on which the statute of limitations period begins to run, the Court will look to the federal doctrine of continuing violations rather than the

corresponding Michigan state law. "The Sixth Circuit has previously recognized two distinct categories of continuing violations, namely, those (1) alleging serial violations and (2) identified with a longstanding and demonstrable policy of discrimination." *Id.* However, it warned that the continuing violations doctrine is applied most commonly in Title VII cases and rarely extended to § 1983 actions. *Id.* at 267.

The first category of a continuing violation (i.e., a serial violation) is no longer recognized by the Supreme Court following it's holding in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101(2002). Previously, as long as at least one discriminatory act occurred within the relevant limitations period, any sufficiently related prior acts would also be treated as though they fell within the limitations period. *Morgan*, 536 U.S. at 114. In *Morgan*, however, the Supreme Court held that "when [a plaintiff] seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period." *Sharpe*, 319 F.3d at 267 (citing *Morgan*, 536 U.S. at 113); *see also Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011). Rather, each discrete incident of discrimination or retaliation constitutes a separate unlawful action that must fall within the statutory period. *Sharpe*, 319 F.3d at 267.

Continuing violations that constitute "a longstanding and demonstrable policy of discrimination," on the other hand, remain cognizable. *Id.* at 268. However, in order to establish such a violation, a plaintiff "'must demonstrate something more than the existence of discriminatory treatment in his case.'" *Id.* (quoting *Haithcock v. Frank,* 958 F.2d 671, 679 (6th Cir. 1992)); *see also Cherry v. City of Bowling Green, Ky.*, 347 F. App'x 214, 216 (6th Cir. 2009) ("The policy must extend beyond the plaintiff who asserts the doctrine . . . ."). "The preponderance of the evidence

9

must establish that some form of intentional discrimination against the class of which [the Plaintiff] was a member was the [Defendant's] standing operating procedure." *Sharpe*, 319 F.3d at 267 (quoting *EEOC v. Penton Indus. Publishing Co.,* 851 F.2d 835, 838 (6th Cir.1988)).

This action was filed on June 6, 2012. The relevant date for the beginning of the statute of limitations under Michigan law is therefore June 6, 2009. All injuries that occurred prior to this date are time-barred unless the continuing violations doctrine applies. It does not. The Plaintiff's allegations consist of discrete discriminatory acts which constitute separate, actionable events. *Cf. Phifer v. City of Grand Rapids, Michigan*, 657 F. Supp. 2d 867, 873 (W.D. Mich. 2009) (allegations are considered "serial violations because each of the acts complained of independently provided notice that [the Plaintiffs'] rights were reputedly being violated"). Consequently, they do not act to extend the statute of violations to permit the Plaintiffs to sue for actions that occurred prior to June 6, 2009. *Sharpe*, 319 F.3d at 267. Even if the acts could be considered to constitute a longstanding policy of discrimination, the Plaintiffs have not alleged that the claimed act of discrimination is aimed at any class of which they are a member. Consequently, the second category of a continuing violation is not applicable here. *Id.* at 268. Thus, as the continuing violation doctrine does not apply, all alleged violations that occurred prior to June 6, 2009 are barred by the statute of limitations.

The Plaintiffs' claim of unequal enforcement of the City's ordinances deserves additional comment. They allege that the City enforced its ordinances against them in 2008 but declined to enforce the same or similar ordinances against other similarly situated individuals both before and after 2008. Although some of their requests for enforcement occurred between 2009 and 2011 - within the limitations period - these requests do not constitute actionable events. The equal protection injury is time-barred because it was complete and cognizable in 2008 when the City

enforced its ordinances against the Plaintiffs after allegedly failing to enforce them against other individuals for many years prior to the claimed incident. At that time, they knew or had reason to know of the injury. *See Kuhnle Bros., Inc.*, 103 F.3d at 520 ("In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights."). A new equal protection violation does not occur each time that the City declined a request by the Plaintiffs to enforce its ordinances. *Cf. Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) ("Passive inaction . . . does not support a continuing violation theory."); *cf. also Eidson v. Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Thus, the recent lack of response to the Plaintiffs' requests for enforcement does not support a claim that falls within the statute of limitations even though the requests were made after June 6, 2009.

A review of the factual allegations within the complaint indicates that the statute of limitations bars all of the allegations except for those based on the manner in which the City handled the Plaintiffs' Act 222 claim.

**B.      Act 222 Claim**

In December 2011, the culverts along Rathmor Road overflowed with water that drained onto the Plaintiffs' property. Michigan Public Acts 222 of 2001, Mich. Comp. Laws §§ 691.1416-19, establishes that a municipality is immune from tort liability for a sewer backup unless certain conditions are met. Thus, a  claimant may seek compensation from a government agency for property damage resulting from a sewage disposal event by demonstrating the existence of each of the following:

> (a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury.

Mich. Comp. Laws § 691.1417(3). If no agreement is reached with the agency regarding the amount of reimbursement, the claimant may file a civil action against the agency. *Id.* § 691.1419(6). In this case, the City rejected the Plaintiffs' claim based on its assertion that it does not own the culverts through which the water passed.  Therefore, the City concluded that it was not an "appropriate governmental agency." *See id.* § 691.1416(b) ("appropriate governmental agency" is one which owns or operates portion of sewage disposal system that allegedly caused damage). In their opposition papers, the Plaintiffs insist that (1) the City is the owner of the culverts, and (2) the denial of their Act 222 claim violates their fundamental rights under the First Amendment and the Fourteenth Amendment Due Process and Equal Protection Clauses of the United States Constitution. In its opposition to the Plaintiffs' positions, the City has raised such affirmative defenses as the statute of limitations, exhaustion of remedies, the res judicata doctrine, and collateral estoppel. Moreover

It also contends that the claim should be denied on the merits because the Plaintiffs s have failed to state a claim upon which relief can be granted.

**1.    Statute of Limitations**

Notwithstanding the City's argument, the Plaintiffs assert that they submitted their Act 222

12

claim within the statute of limitations period; namely, December 27, 2011. However, the City disagrees, contending that the Plaintiffs' claim is simply a repeat of previously submitted time-barred allegations that have addressed this issue. The City's retort is an inaccurate account of the Plaintiffs' constitutional claims, which are not founded on any injury caused by the physical flooding of their property. Rather, their claimed injury is the allegedly improper manner in which the City handled the Plaintiffs' Act 222 claim. This alleged injury did not accrue until February 9, 2012, the date on which their claim was rejected.

## 2.    Exhaustion

Next, the City argues that the Plaintiffs' claims are barred because the Plaintiffs declined to appeal its denial of their Act 222 claim to the Oakland Circuit Court. This argument is unavailing. There is no requirement that state court remedies must be exhausted prior to commencing a § 1983 lawsuit. *Monroe v. Pape*, 365 U.S. 167, 183 (1961) (federal action is supplementary to state action; state remedy need not be first sought and refused as a condition precedent.).

## 3.    Res Judicata

Similar to their statute of limitations argument discussed above, the City submits that the res judicata doctrine bars this claim because it relates to the flooding issue involving the culverts which could have been raised in prior litigation. (Def. Supp. Br. 6). This doctrine requires that "'[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.'" *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010) (quoting *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). Under Michigan law, a subsequent legal action is barred if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved

13

in the first." *Id.* at 817. "Res judicata 'bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'" *Id.* (quoting *Abbott*, 474 F.3d at 331). The burden of proof is borne by the party asserting res judicata. *Id.*

Here, the res judicata defense fails for the same reason that the statute of limitations argument failed. On the basis of the record, the constitutional claims raised by the Plaintiffs in this lawsuit are unrelated to the physical flooding. Their claims are premised solely on the manner in which the City handled the Plaintiffs' Act 222 claim. Consequently, these constitutional claims could not have been raised by the Plaintiffs until the City rejected their Act 222 claim, which occurred after the conclusion of the earlier state court litigation.

### 4.    Collateral Estoppel

The final defense by the City is that the issue of the ownership of the culverts has already been decided and, it may not be raised again according to the doctrine of collateral estoppel.[1] As noted above, a federal court must give the same preclusive effect to a state court judgment as would the law of the state in which the judgment was entered. *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007). In this case, the Plaintiffs submit that the initial judgment was issued by a state court in Michigan. In Michigan, a party who seeks to raise the doctrine of collateral estoppel must satisfy the following three elements: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue;' and (3) 'there must be mutuality of

---

[1]Although the City refers to "res judicata" as barring further litigation of the issue of the ownership of the culverts, the Court will interpret this defense as invoking the doctrine of collateral estoppel, or "issue preclusion."

14

estoppel.' " *Gilbert v. Ferry*, 413 F.3d 578, 580-81 (6th Cir. 2005) (citing *Monat v. State Farm Ins. Co.,* 677 N.W.2d 843, 845-46 (Mich. 2004)). The third element of mutuality is not required when collateral estoppel is used defensively, as it is in this case. *Monat*, 677 N.W.2d at 846.

Although the issue of culvert ownership was alluded to in prior disputes between the parties, the City has not proffered any judgment in which this fact was actually litigated and essential to the final adjudication. In the 2004 litigation, the Plaintiffs' claim that the City's responsibility for the flooding on their land was dismissed on the basis of state law governmental immunity and did not rely on a determination of the ownership of the culverts. Although this issue, arguably, would have been pertinent to the "sewer disposal system event" exception to governmental immunity, it (1) was not raised before the trial court, and (2) was deemed waived on appeal. Thus, the ownership of the culverts was never actually litigated.

The judgment from the 2008 litigation determined that the Plaintiffs had violated local ordinances regarding berm construction and sump pump connections. However, the record does not indicate that the ownership of the Rathmor Road culverts played any role in the ultimate decision by the court. A review of more recent litigation also failed to settle the issue. The denial of the Act 222 claim was never appealed and, as a result, the issue of ownership was never litigated and resolved by a court. The denial of a permit for a second berm in 2008 was deemed to have been abandoned on appeal by the City Commission and was not pursued in the state court. Although the City's denial of a permit to work in the right-of-way along Rathmor Road was litigated in a state court, the final outcome was ultimately settled by the parties. Collateral estoppel "does not apply to consent judgments where factual issues are neither tried nor conceded." *Smit v. State Farm Mutual Auto. Ins. Co.*, 525 N.W.2d 528, 532 (Mich. Ct. App. 1994). In this case, there is no

indication that parties intended settlement to preclude litigation on the issue of the ownership of the culverts. *Arizona v. California*, 530 U.S. 392, 414 (2000) ("[S]ettlements ordinarily occasion no issue preclusion . . . unless it is clear, as it is not here, that the parties intend their agreement to have such an effect.").

**5.      Equal Protection**

The decision by the City to reject the Act 222 claim does not support a viable Equal Protection claim, because the Plaintiffs have not alleged that any similarly situated person or entity was granted a similar claim. Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005). The Plaintiffs bear "the burden of demonstrating that they were treated differently than other property owners who were similarly situated in all material respects." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 878, 184 (U.S. 2013) and *cert. denied*, 133 S. Ct. 904 (U.S. 2013). They have not alleged that any other person has been granted an Act 222 claim as a result of an overflow of water from the culverts along Rathmor Road.

**6.      First Amendment Retaliation**

16

The Plaintiffs next allege that the denial of the Act 222 claim was an act of retaliation by the City for their repeated complaints and the filing of the 2004 lawsuit. The City denies the legitimacy of this argument, contending that the claim is barred by the doctrine of res judicata because the evidence demonstrates that the Plaintiffs had previously advanced a First Amendment retaliation claim in 2008 when they alleged that the 2008 litigation was a retaliation for the 2004 lawsuit. The Court does not agree. The alleged injury in this case could not have been raised as a counterclaim in 2008, because it did not accrue until the City rejected the Plaintiffs' Act 222 claim in 2012.

In order to establish a claim of retaliation, the Plaintiffs must prove that (1) they were engaged in a constitutionally protected activity; (2) the Defendant's challenged action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of their constitutional rights. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 585-86 (6th Cir. 2008) (citing *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998)). "A motivating factor is essentially but-for cause - without which the action being challenged simply would not have been taken." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation marks and citation omitted).

These allegations by the Plaintiffs are sufficient to state a prima facie claim of retaliation. When evaluating a motion to dismiss, this Court must initially treat all adequately pled factual allegations by the non-moving party as being correct. Here, the Plaintiffs have alleged that they engaged in a protected activity. *Eckerman v. Tennessee Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (filing of lawsuit is protected activity); *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (petitioning government official is protected). They further allege that the adverse action (i.e., the denial of a reimbursement for damage to their home) was motivated by their protected

conduct. On the other hand, the City submits that it has a non-retaliatory reason for denying the claim. However, at this stage of the proceedings, the Court must preliminarily accept the Plaintiffs' allegations as being true. Even if the City has a non-retaliatory reason for denying the Act 222 claim, the Plaintiffs can establish their retaliation claim if they can prove that the denial was only partially motivated by retaliation.

**7.     Substantive Due Process**

The Fourteenth Amendment to the United States Constitution provides protection from the deprivation "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Substantive due process "protects individual liberty [or property] against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotation marks omitted). The Plaintiffs submit that the decision by the City to deny ownership of the culverts constitutes an "[a]rbitrary and capricious decision to advance false statements in order to block the [Act 222] claim from proceeding" in violation of their substantive due process rights.  They reiterate that the City does own the culverts because a city engineer, James Burton, referred to the culvert as "a City pipe" during a deposition that was taken during the 2008 litigation. (Pl. Supp. Br., Ex. 9 at 271:25-72:14). Notwithstanding this statement, the City stands by its position that the Plaintiffs have failed to state a claim upon which relief can be granted.

"[A] substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren*, 411 F.3d at 707. In *Warren*, the Sixth Circuit noted that "challenges to arbitrary and capricious government action appear most frequently in cases involving zoning and other ordinances." *Id.*

In meeting the obligations of their claim, the Plaintiffs must first establish that they have a protected property interest in the Act 222 claim. *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011) ("[A] plaintiff must demonstrate a deprivation of a constitutionally protected liberty or property interest in order to establish a due process violation based on discretionary conduct of government officials . . . ." (citing *Prater v. City of Burnside, Ky*, 289 F.3d 417, 431-32 (6th Cir. 2002)). "Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). To establish a property interest, a plaintiff must have more than a unilateral expectation of the receipt of a benefit. *Id.* The Sixth Circuit has held that a party cannot possess a property interest if the government's decision to award the benefit is discretionary.  *R.S.W.W., Inc. v. City of Keego Harbor,* 397 F.3d 427, 434 (6th Cir. 2005). In order to demonstrate a property interest in the Act 222 claim, they must prove that the City lacked discretion to deny the claim. *See, e.g.*, *Silver v. Franklin Tp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir. 1992) (No property interest if Board had discretion to deny plaintiff zoning certificate even if he complied with certain minimum, mandatory requirements).

One of the purposes of the statute in question is to afford property owners "greater efficiency, certainty, and consistency in the provision of relief for damages." Mich. Comp. Laws § 691.1417(1). In order to fulfill this goal, the statute provides the procedure that must be followed by a claimant in order to seek compensation for a qualifying sewer event. An examination of the text of the statute indicates that reimbursement is required if the claimant satisfies the listed criteria. *See id.* § 691.1417(3), (4). The statute permits a civil lawsuit where the parties disagree as to the amount

19

of compensation that must be paid, but there is no indication that a government agency may refuse payment to a qualifying claimant. *Id.* § 691.1419(6) ("If a governmental agency notified of a claim under subsection (1) and a claimant do not reach an agreement on the amount of compensation for the property damage or physical injury within 45 days after the receipt of notice under this section, the claimant may institute a civil action."). Here, the Plaintiffs argue that (1) they have met all of the required criteria, and (2) their claim was falsely denied by the City. Taking the allegations as true, the Plaintiffs have a protected property interest in reimbursement for an Act 222 claim. *See Silver*, 966 F.2d at 1036 ("[I]f state law circumscribed the discretion of the [government agency] to such an extent that approval . . . was mandatory once [Plaintiffs] met certain minimal requirements, then a property interest could exist."). Moreover, they have alleged that the City's decision was arbitrary, capricious and false. These allegations - despite having been challenged - are sufficient to state a substantive due process claim. *See Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 573 (6th Cir. 2008).

To the extent that the Plaintiffs contend that they have a liberty interest in corruption-free decision making by a government agency, the Sixth Circuit has determined that no such interest exists. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 860 (6th Cir. 2012) *cert. denied,* 12-883, 2013 WL 210697 (U.S. Mar. 25, 2013). They cite *Hammond v. Baldwin,* 866 F.2d 172, 176 (6th Cir.1989) for the proposition that the "submission [of a claim] to a fatally biased decision-making process is in itself a constitutional injury." (Pl. Supp. Br. 13). The Sixth Circuit recently clarified, however, that *Hammond* concerned the justiciability of a corruption claim - not the existence of a liberty interest in fair governmental processes. *EJS Properties*, 698 F.3d at 860. Despite the quoted language, *Hammond* did not recognize a liberty interest in fair decisions. *Id.*

## C.      Supplemental Brief

The Plaintiffs included two new factual allegations in their supplemental brief that were not contained in the complaint: to wit, the City (1) refused to permit the appeal of the City Commission's decision to deny a permit for a new berm to be constructed on their property, and (2) denied them a permit to block the culverts that rest in the Rathmor Road  right-of-way. The purpose of the request by the Court for supplemental briefing was to clarify the relationship between the allegations in the complaint and the claims raised and decided in the prior state court litigation between the parties. By alleging two new theories of liability, the Plaintiffs far exceeded the scope of the requested briefing. A supplemental brief is not the appropriate avenue to raise new factual allegations or expand the theory of liability. *See Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 521 (6th Cir. 2008) ("Ordinarily, when the omission of a critical allegation in a complaint is highlighted by a defendant's motion to dismiss, the appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion to dismiss."); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (plaintiff may not expand claims to assert new theories in response to summary judgment).

Nevertheless, courts have, at appropriate times, construed the inclusion of new factual allegations or theories of liability which were raised for the first time in a response brief as an implicit motion to amend. *E.g.*, *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999); *JAT, Inc. v. Nat'l City Bank of Midwest,* 460 F.Supp.2d 812, 818 (E.D. Mich.2006) ("Where Plaintiffs are not attempting to plead new causes of action against Defendants, but are merely providing additional support to their initial pleading, this Court is inclined to allow an implicit motion to amend at this stage."). Here,  no discovery has yet taken place, and Bloomfield Hills was

provided the opportunity to - and did in fact - respond to the new allegations. For these reasons, the Court will construe the addition of these new factual allegations as an implicit motion to amend.

Fed. R. Civ. P. 15(a) requires that leave to amend be freely granted. However, a request to amend a complaint may be denied as futile if the amended pleading is unable to survive a motion to dismiss. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). Where, as in this case, a prior motion for summary judgment has been filed and evidence has been produced, the Court need not ignore such evidence. *See, e.g.*, *Harrison v. Burt*, 2:07-CV-11412, 2008 WL 4058288, at *2 (E.D. Mich. Aug. 28, 2008) (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 561-62 (10th Cir.1997)). The Court will now consider whether the new allegations can survive the pending motion.

**1.      Appeal of Denial of 2008 Berm Application**

First, The Plaintiffs allege that their constitutional claims are supported by the City's 2009 decision to refuse them an opportunity to appeal the denial of a permit for a second berm.

**a.      Substantive Due Process**

In their supplemental brief, the Plaintiffs contend that "the City denied plaintiffs' Fourteenth Amendment right to due process of law when it refused to provide them [their] appellate process that is guaranteed to them under the City's own ordinances." (Pl. Supp. Br. 4). The Plaintiffs do not specify whether they allege a substantive or procedural due process claim, but as the alleged injury is a failure to provide an opportunity to appeal, the Court will construe the claimed injury as a procedural due process violation.

The City contends that this claim by the Plaintiffs is barred by the statute of limitations. However, it should be noted that the denial of their opportunity to appeal occurred on June 24, 2009,

22

the date on which the City informed the Plaintiffs that their appeal would not be scheduled. This date falls within the three-year statutory period.

Next, the City maintains that this claim is barred by the doctrine of res judicata because a state court had previously decided that the Plaintiffs may not maintain a berm which does not satisfy ordinance requirements. The alleged injury, however, is the denial of the appellate process - not the rejection of the initial permit. The City has not demonstrated that the constitutionality of the City's decision to deny the Plaintiffs' the opportunity to appeal was - or could have been - resolved on a state court level.

In order to establish a procedural due process claim, the Plaintiffs bear the burden of showing that (1) they have a liberty or property interest that is protected by the due process clause; (2) they were deprived of that interest; and (3) the state did not provide them with adequate procedural rights prior to the challenged act of deprivation. *EJS Properties*, 698 F.3d at 855. Here, there is no evidence in the record that the Plaintiffs have a protected property interest in the permit to build a berm. The fact that the appellate procedure is required by City ordinance does not establish a property interest. *See, e.g.*, *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008) ("Processes mandated by municipal ordinances or state law are insufficient to establish a property interest."); *Richardson v. Twp. of Brady*, 218 F.3d 508, 518 (6th Cir. 2000). Moreover, the Plaintiffs have not alleged that the City's discretion to grant or deny the permit was somehow limited. *EJS Properties*, 698 F.3d at 856. Their additional contention that they have a liberty interest in receiving a fair appellate process must be rejected for the reasons that have been described above. *See id.* at 860.

Even if the Plaintiffs could identify a protected property or a liberty interest, their claims

23

must be rejected because they may not seek relief for a procedural due process violation under 42 U.S.C. § 1983 without first pleading and proving the inadequacy of state processes and remedies. *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004); *see also Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001) (no violation of procedural due process when "plaintiffs were afforded an opportunity to seek review in the state court, but chose not to pursue their claims"). The Plaintiffs do not challenge the City's contention that they could have appealed the denial of the permit to state court.

**b.      First Amendment Right to Petition**

The Plaintiffs next contend that by denying them a forum in which to contest the rejection of their permit application, their First Amendment rights to petition were wrongfully denied. This claim must be dismissed because the Plaintiffs have not  established that it is supported by the factual allegations in this case. The Plaintiffs cite to cases which recognize that a petition is a protected activity. However, neither cited case is applicable to a First Amendment challenge to a local government's decision to characterize such a request for an appeal as having been waived by the aggrieved party. *Holzemer v. City of Memphis*, 621 F.3d 512, 518 (6th Cir. 2010) (alleging First Amendment retaliation claim for actions protected by Petition Clause); *White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (petitioning against local zoning project was protected activity).

Moreover, the Plaintiffs were able to petition the City for an appeal of its denial of the permit. They simply disagreed with the City's decision to consider the appeal to be waived. The Plaintiffs could have appealed this decision, as well as the underlying denial of the berm application, to the state courts but for unexplained reasons elected to forego that opportunity.

**c.      First Amendment Retaliation**

24

The Plaintiffs next contend that the City's action was in retaliation for the lawsuit that they filed against the City in 2004 and their other complaints to the City. For the reasons described above, the Court concludes that the Plaintiffs have adequately pled that (1) they engaged in a protected activity; (2) each of them suffered an adverse action; and (3) the adverse action was at least in part motivated by the protected activity. The protected activity herein consisted of petitions to the City and the 2004 lawsuit. The Court concludes that the denial of the identified permit constituted the adverse action and was alleged to be at least partially in response to the protected activity.

**2.      Denial of Permit to Work in Right-of-Way**

The next allegation raised by the Plaintiffs is that the City violated their right to due process when, in 2012, it denied them a permit to block the culverts that sit in the right-of-way of Rathmor Road on the basis of ownership. In its defense, the City asserts that the ownership of the culverts was resolved by a state court during the subsequent appeal. As such, it submits that collateral estoppel precludes the Plaintiffs from raising this claim now. On the contrary, the record indicates that the issue of ownership was never established. In fact, (1) the City never made a final determination as to whether it owned the culverts, and (2) this issue was ultimately settled by the parties. Under Michigan law, a settlement has no preclusive effect unless the parties indicate otherwise. *Am. Mut. Liability Ins. Co. v. Michigan Mut. Liability Co.*, 235 N.W.2d 769, 776 (Mich. Ct. App. 1975). In this case, there is no indication that the settlement was intended to preclude the parties from raising the issue of the ownership of the culverts.

Although the denial of the permit was appealed to the state court, res judicata does not bar those constitutional claims raised in this Court. The review by the state court was limited to the decision of the City Commission based on the record before it. Mich. Const. Art. 6, § 28. Because

25

the scope of appeal of the City's administrative decision does not include the authority to decide these constitutional claims, they were not properly before the state court on appeal. *See Houdini Properties LLC v. City of Romulus*, 743 N.W.2d 198, 198–99 (Mich. 2008); *Hitchingham v. Washtenaw Cty. Drain Comm'r*, 445 N.W.2d 487 (Mich. Ct. App. 1989); *see also Buchanan v. Oakland County*, No. 12-13666, 2013 WL 879821 (E.D. Mich. Mar. 8, 2013); *Get Back Up, Inc. v. City of Detroit,* 878 F.Supp.2d 794, 804 (E.D. Mich. 2012).

However, a substantive due process claim based on this allegation must fail on the merits. As discussed above, the Plaintiffs have not established that they have a protected property or liberty interest in the permit. If a government body has the discretion to deny a permit, there is no protected interest. *R.S.W.W., Inc.*, 397 F.3d at 434. Here, the Plaintiffs have not alleged that the City was obligated to issue a permit to work in the right-of-way.

On the other hand, the Plaintiffs are able to establish a prima facie violation of their rights under the Equal Protection Clause. In order to establish a class-of-one selective enforcement claim, the Plaintiffs must show that (1) the City distinguished between them and other similarly situated individuals for improper reasons or (2) it had no rational reason to make the distinction. *Systematic Recycling, LLC v. City of Detroit*, 685 F. Supp. 2d 663, 675 (E.D. Mich. 2010). The selective treatment must have been motivated by an intent to (1) discriminate, (2) inhibit the exercise of constitutional rights or (3) cause injury. *Id.* According to the Plaintiffs, they were treated differently from their neighbor during the permitting process, in that they were required to obtain a permit before beginning work in the right-of-way (and indeed threatened with arrest if they failed to comply) while their neighbor was not required to apply for a permit before he built a dam and dug a trench in the same right-of-way. They allege that this disparate treatment is without any rational

basis. Although the Plaintiffs did not specifically allege a malicious purpose for this selective treatment, the complaint is full of allegations that the City's actions are intended to prevent them from exercising their constitutional rights. As a result, they have adequately pled an Equal Protection claim. *See Warren*, 411 F.3d at 710-11.

The Plaintiffs' First Amendment retaliation claim also survives. Both of them have engaged in the protected activity of filing a lawsuit and petitioning their local government for relief. In summary, they have alleged an adverse action (i.e., the denial of the permit) that was motivated at least in part by their protected conduct.

**D.    Municipal Liability**

"Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (footnotes omitted). Eight years after *Monell*, the Supreme Court clarified that this "official policy" requirement also pertains to a single decision by a municipality's legislative body. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[A] municipality may be liable under § 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future - because even a single decision by such a body unquestionably constitutes an act of official government policy."). If a decision "to adopt a particular course of action tailored to a particular situation" is made by a municipality's "authorized decision makers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.* "[M]unicipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among

27

various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Here, the challenged decisions were made by the City's legislative body or an official with policy-making authority. The decision to deny the Act 222 claim on the basis of the ownership of the culverts was conveyed by the City's attorney who represented that he spoke for the City. (Def. Resp. Pl. Supp. Br. Ex. 9) ("It is the City's position that the recent flooding on your property was not caused by any defective storm drainage system under the control of the City. Accordingly, the City is denying your claim for compensation."). The decision to refuse an appeal of the denial of the berm permit to the City Commission was made by the City Manager under the signature of "The City of Bloomfield Hills." (Def. Resp. Pl. Supp. Br. Ex. 6). The decision to deny the permit to work in the right of way was made by the City Commission. Assuming the facts as alleged in the complaint to be true, there is a presumptive municipal liability for the Plaintiffs' claims.

## E.   Sanctions

The City also requests the imposition of sanctions pursuant to Fed. R. Civ P. 11 and 28 U.S.C. § 1927 on the ground that the Plaintiffs' complaint is frivolous. It also seeks costs and attorney fees that have been incurred in defending this lawsuit. In their opposition to this application for relief, the Plaintiffs submit that the City violated the Rule 11 "safe harbor" rule by failing to wait the required 21 days after notifying them of its intent to request sanctions before filing its motion.

The Sixth Circuit has held that the 21-day safe harbor rule is mandatory for an award of sanctions under Fed. R. Civ. P. 11. *See, e.g.*, *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997). The City notified the Plaintiffs of its intention to seek Rule 11 sanctions in a letter that bore the date of June 28, 2012. Its motion for sanctions was filed on July 13, 2012. Noting that the City

28

filed its motion after waiting fewer than 21 days, an award of sanctions under Rule 11 under this circumstance would be improper.

The unavailability of sanctions under Rule 11 does not preclude an award of sanctions under 28 U.S.C. § 1927. *Id.* at 297-98. Section 1927 permits a court to require that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" must "satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. This objective standard does not require a showing of bad faith "at least when an attorney knows or reasonably should know that a claim pursued is frivolous." *Ridder*, 109 F.3d at 298. Rather it "authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." *Id.* However, "[s]imple inadvertence or negligence that frustrates the trial judge will not support a sanction . . . ." *Id.* at 298. Moreover, "[t]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were unintentionally or unreasonably multiplied." *Id.* The Sixth Circuit has cautioned that "an award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Ridder*, at 299.

As evidenced by the ruling of this Court on the motion for summary judgment, these claims are not sufficiently frivolous as to warrant the sanction of attorneys' fees and costs.

IV.

For the reasons that have been set forth above, the Court grants in part and denies in part the City's motion for summary judgment (ECF No. 8) and denies its motion for sanctions (ECF No. 11). Specifically, the Plaintiffs' (1) due process claim is dismissed except as it pertains to the denial of

29

the Act 222 claim; (2) equal protection claim is dismissed except as it relates to the requirement that

the Plaintiffs file for a permit to work in the right-of-way; and (3) first amended retaliation claim

is dismissed except as it applies to the rejection of the Act 222 claim, the denial of the appellate

process for the berm application, and the rejection of the permit to work in the right-of-way. The

Plaintiffs are directed to file their amended complaint within twenty (20) days from the date of this

order.

IT IS SO ORDERED.


Date: June 11, 2013                                          s/Julian Abele Cook, Jr.
                                                            JULIAN ABELE COOK, JR.
                                                            U.S. District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their
respective email addresses or First Class U.S. mail to the non-ECF participants on June 11, 2013.


                                                            s/ Kay Doaks
                                                            Case Manager


30